MARY B. LANE, REGINALD E. GARRISON and COR- NELIA GARRISON TURNER, Appellants, v. AR- THUR C. GARRISON, Trustee, CLARK GARRI- SON and STATE NATIONAL BANK.

### Division One, April 8, 1922.

1. **WILLS: Rule for Construction: Testator's Intention.** The con- trolling rule for the construction of wills, emphasized by many decisions and made mandatory by statute, is to have due regard to the directions of the will and the true intent and meaning of the testator.

2. ———: ———: ———: **Ambiguous Clauses.** Where the testator's intention is set forth in clear and distinct provisions first made in his will, the courts, to prevent such intention from being sub- verted or thwarted, will not permit such first provisions to be cut down by subsequent clauses of the will ambiguous or inferential in their intent.

3. ———: ———: ———: **Other Cases.** The construction which courts have put upon other wills is usually of little value in arriv- ing at the testator's intention in the particular will before the court, because usually no two wills contain the same language and they are made under different circumstances.

4. ———: ———: ———: **Spendthrift Trust: Attempted Alienation.** Where testator, by his will, devised and bequeathed a certain share of his residuary estate to a trustee to hold in trust and to pay to testator's grandson during his natural life a yearly stipend, not exceeding a fixed sum, out of the income of such share, the balance of such income to accumulate, and if said grandson should die without lawful issue him surviving said trust fund and accumu- lations should be distributed to named persons; and in case such grandson should leave lawful issue him surviving, then the trustee should hold such trust fund as trustee for such issue until they severally attained their legal majority; and in case there should be an entire failure of such issue without any thereof having

Lane v. Garrison.

attained legal majority, then such fund and accumulations should be distributed to named persons; and further directed that such provisions for his grandson should not be in any manner subject to either anticipation or alienation or assignment, voluntary or involuntary, on the part of the beneficiary, nor should the same be in any way liable or subject to the payment of the beneficiary's debts; but in case of any such assignment or attempt to make such assignment, voluntary or involuntary, or to subject said fund to the payment of any such debts, either as to the income or principal of such fund, in whole or in part, such provisions in favor of such beneficiary should cease and lapse as to him, and the beneficiary interest in said fund should pass to such other persons as would take same in case of his decease as above provided; and the beneficiary for life attempted to assign and transfer his interest in said trust fund as security for a note executed by him for money loaned to him, the only effect of such attempted transfer was that his yearly stipend from the income of said trust fund lapsed and fell into the *corpus* of the fund and its accumulations, which the trustee held in trust and should continue to hold in trust for those who might be entitled to receive it upon the death of the beneficiary for life.

5. ——: ——: ——: ——: **Rule Against Perpetuities.** The trust created by said will was not void, as violating the rule against perpetuities, inasmuch as the estates thereby created must all vest in ascertained persons within the life or lives of persons in being at the testator's death and twenty-one years and the period of gestation thereafter.

Appeal from St. Louis City Circuit Court.—*Hon. Victor H. Falkenhainer*, Judge.

Affirmed.

*Paul Bakewell, Jr.*, for appellant.

(1) An equitable estate for life may be given with a limitation over, to a third party, on the life tenant's attempt to alienate or become bankrupt. In re Luscombe's Will, 109 Wis. 186; Lampert v. Haydel, 96 Mo. 450; Nichols v. Eaton, 91 U. S. 722; Louisville v. Cook, 135 Ky. 261; Bull v. Natl. Bank, 90 Ky. 452; Bottom v. Fultz, 124 Ky. 302; Bromhall v. Ferriss, 14 N. Y. 41; Camp v. Cleary, 76 Va. 140; In the Matter of Porter, 3 Ch. 481; Brandon v. Robinson, 18 Ves. 429; 2 Beach on Trustees, p. 1301, sec. 569; Gray, Restraints on Aliena-

tion, sec. 78, p. 51. (2) An attempt to assign was as effective to terminate the interest of Clark Garrison, and to cause the next succeeding estate to arise, as an actual assignment. In re Luscombe's Will, 109 Wis. 186; In Matter of Porter, Coulson v. Copper, 3 Ch. 487; Adams v. Adams, I Ch. 376; Martin v. Mangham, 14 Sim. 229; Oldham v. Oldham, L. R. 3 Eq. 404. (3) On the termination of Clark Garrison's interest, the next succeeding estate arose. Walsh v. Matthews, 11 Mo. 134; Dumey v. Schoeffler, 24 Mo. 170; Gilker v. Brown, 47 Mo. 107; Hoselton v. Hoselton, 166 Mo. 188; Hook v. Dyer, 47 Mo. 218; Conger v. Lowe, 124 Ind. 369; Overton v. Lea, 108 Tenn. 555. (4) Where there is no member of the class in existence capable of taking at the time of the happening of the contingency upon which the gift is to take effect, the gift to the class fails, and there being no issue of Clark Garrison in existence at the termination of his estate, the estate of plaintiffs at once arose. Clayton v. Robards, 54 Mo. App. 543; Lehnhoff v. Theine, 184 Mo. 356; Smith v. Smith, 141 N. Y. 29; Wilson v. Denig, 166 Pa. St. 29; Rood on Wills, sec. 668; 40 Cyc. 1483. (5) The words in the will creating the interest subsequent to the interest of Clark Garrison, refer to the termination of his interest as the time when the succeeding estate arises. Dickerson v. Dickerson, 211 Mo. 495; De Lassus v. Gatewood, 71 Mo. 381. (6) Under the will, on the termination of Clark Garrison's interest, the estate was to go and vest in the alternative. That is, to his issue, if any, and if none, to these plaintiffs. Eckle v. Ryland, 256 Mo. 445. (7) Under the will, as well as under the law, when the interest of the plaintiffs arose, they were entitled to a distribution to them of the entire estate. Donaldson v. Allen, 182 Mo. 649; Speed v. Terminal Ry. Co., 163 Mo. 129; Rector v. Dalby, 98 Mo. App. 189; Blumenthal v. Blumenthal, 251 Mo. 703; Carter v. Long, 181 Mo. 710; 2 Perry on Trusts (6 Ed.) sec. 520. (8) The decree of the trial court made the testator's will for him, but did not construe it. This is not permitted. Freeman v. Maxwell, 262 Mo. 23; Dameron v. Lanyon, 234 Mo. 646. (9) The construction which

the trial court placed upon this provision of the will, by its decree, violates the rule against perpetuities. Lockridge v. Mace, 109 Mo. 167; Shepperd v. Fisher, 206 Mo. 239; 1 Washburn, Real Property (4 Ed.) p. 110, sec. 57.

*T. Percy Carr* for respondent.

(1) The trustee is the representative of the possible unborn issue of Clark Garrison, and is bound to protect their interests in this suit. Downey v. Seib, 8 L. R. A. (N. S.) 49; Boal v. Wood, 42 L. R. A. (N. S.) 439; In re Luscombe's Will, 109 Wis. 186; Green v. Grant, 143 Ill. 61, 18 L. R. A. 381; Perkins v. Land & Imp. Co., 112 Wis. 509; Franklin Sav. Bank v. Taylor, 4 C. C. A. 55, 53 Fed. 854. (2) Under a proper interpretation of the will, the rights of said unborn issue are not forfeited on account of their father's violation of the condition against anticipation, which condition is purely personal as to him. In re Bedson's Trust, 28 Ch. Div., 523; Blackman v. Fysh, 3 Ch. 209; King v. Grant, 55 Conn. 170; Rockwell v. Swift, 59 Conn. 289; In re White's Estate, 163 Pa. 401. The interest of said unborn issue will not be held to be one on condition where any other interpretation is possible. Collier's Will Case, 40 Mo. 287; Deacon v. Trust Co., 271 Mo. 686; Kerens v. Trust Co., 283 Mo. 616.

SMALL, C.—Appeal from the Circuit Court of the City of St. Louis. This suit involves the construction of the seventh clause of the will of Daniel E. Garrison, who died in July, 1916. The will was dated May 22, 1916, and was duly probated. After making certain specific bequests, disposing of his household goods, jewelry, pictures and effects of personal use, and $15,000 in cash to be paid three several legatees, by said clause 7 the testator disposed of the rest, residue and remainder of his estate, real, personal and mixed, by dividing it into five equal shares, giving one share to Mary B. Garrison, the widow of his deceased son, Cornelius K. Garrison; one, to his grandson Reginald E. Garrison, and a third share

to his granddaughter, Cornelia Garrison Turner. The fourth and fifth shares he disposed of as follows:

"The fourth share I give, devise and bequeath to my son, Arthur C. Garrison, to be by him held in trust for the following purposes:

"To pay to my grandson, Daniel E. Garrison, Third, the income therefrom, not exceeding one thousand dollars per annum, divided into monthly, quarterly or semi-annual installments, at the discretion of said trustee, for and during the natural life of said Daniel E. Garrison, Third. If my said grandson, Daniel E. Garrison, Third, shall die without lawful issue him surviving, said entire trust fund remaining on hand at the time of this death, together with all accumulations thereon, shall be distributed, one-half to my son, Arthur C. Garrison, and the other one-half, to Mary B. Garrison, Reginald E. Garrison, Cornelia Garrison Turner and Clark Garrison, share and share alike. In case my said grandson, Daniel E. Garrison, Third, shall, however, leave lawful issue him surviving, then, my said son, Arthur C. Garrison, shall continue to hold said fund, as trustee, for the issue of my said grandson Daniel E. Garrison, Third, until they shall severally attain their legal majority. In case, however, of the entire failure of the issue of my said grandson, Daniel E. Garrison, Third, without any of such issue having attained their majority, as aforesaid, then I direct that the said entire trust fund remaining, shall, upon such failure of issue, be divided between my son, Arthur C. Garrison, and the widow and children of my deceased son, Cornelius K. Garrison, in the same proportions as above provided, in case of the death of my said grandson, Daniel E. Garrison, Third, without issue.

"The fifth share I give, devise and bequeath to my son, Arthur C. Garrison, to be by him held and administered in trust for my grandson, Clark Garrison, upon terms and conditions identical with the trust hereinbefore created for Daniel E. Garrison, Third, except, that, in case of the death of the said Clark Garrison, without issue him surviving, or in case of the failure of the issue of said Clark Garrison, before any of them shall attain

their majority, then the trust fund on hand shall be distributed to said Mary B. Garrison, Reginald E. Garrison and Cornelia Garrison Turner, share and share alike. I direct that said trustee shall have full power, authority and discretion to manage and control the said trust funds as he shall see fit, with absolute discretion either to retain any investments which shall have been made by me, or to change or reinvest such funds, or any part thereof, from time to time, as he shall deem proper, and that no bond shall be required of said trustee, under either of said trusts.

"I further direct that the above provisions in favor of my said grandsons, Clark Garrison and Daniel E. Garrison, Third, shall not be in any manner subject to either anticipation or alienation or assignment, voluntary or involuntary, on the part of either of said beneficiaries, nor shall the same be in any way liable or subject to the payment of their debts; but, in case of any such assignment or attempt to make such assignment, voluntary or involuntary, or to subject said fund to the payment of any such debts of either of such beneficiaries, either as to the income or principal of such fund, in whole or in part, such provisions in favor of either of said beneficiaries shall cease and lapse as to him, and the beneficiary interest in said fund shall pass to such other persons as would take same in case of his decease, as above provided."

By his will, testator appointed his son, Arthur C. Garrison, executor without bond. The estate which passed by the residuary clause was of the value of about $300,000, or each share $60,000. At the time of his grandfather's death, Clark Garrison was single, but he was married after he came back from the World War, but had no children up to the time of the trial, October 26, 1920. November 19, 1919, he borrowed $500 from the defendant State National Bank of St. Louis, for which he executed his note due on demand, and a separate document assigning and transferring to said bank as security for said loan all his right to the interest in the said trust fund held by Arthur C. Garrison, as trustee for him un-

der the will of his grandfather. His mother, Mary B. Lane (formerly Mary B. Garrison), mentioned in the seventh clause of said will, by an instrument in writing dated November 17, 1919, also guaranteed the payment of said note to the bank. Clark Garrison was not a witness in the case, but his mother, Mrs. Lane, was, and she testified that she knew of her son's assignment to the bank and that the will was thereby violated, but she denied that such transfer was made purposely to violate the will, but asserted that it was made to secure money for her son, Clark, who had been gassed in France and was, in consequence, unable to care for himself and needed the money, which she did not have at the time to give him. But the trustee, Arthur C. Garrison, testified that, although he had an interview with Clark Garrison just before the assignment was made, said Clark Garrison did not suggest he was in need of money, nor did he appear physically unable to care for himself. Both Mrs. Lane and one of the other plaintiffs, Reginald E. Garrison, the brother of Clark Garrison, testified that there was no agreement between them and said Clark, by which he was to receive any part of the property sued for in case plaintiffs' suit was successful. Shortly after the assignment to the bank, the trustee, Arthur C. Garrison, was notified thereof, and plaintiffs brought their claim to the trust fund to his attention and requested the trustee to bring suit to have the will construed, which he refused to do. Thereupon, this suit was brought by the plaintiffs, who are the mother, brother and sister of Clark Garrison, mentioned in said clause 7, against the trustee, said Arthur C. Garrison, Clark Garrison and said State National Bank, as defendants. At the time of the trial the income from the trust fund was about $3,000 per annum, and the surplus income over $1,000 per annum paid to Clark Garrison before his assignment and the entire income since then had been regularly reinvested and the said fund increased and accumulated. The petition sets up the will and the assignment by Clark Garrison of his interest to the bank as hereinbefore stated; that Clark Garrison has no issue; that plaintiffs are the alternative beneficiaries

named in the will, and that defendant Arthur C. Garrison, trustee, has failed and refused to recognize plaintiffs' right and failed and refused to bring suit for the construction of said will.

The prayer is for a construction of the will, and an adjudication that plaintiffs are now entitled to all the property in the trust fund in question, both corpus and income. The answer put the allegations of the petition in issue, and further alleged that the suit was collusive between plaintiffs and defendant Clark Garrison.

The court found for the defendant trustee (but not that the suit was collusive), and held that the only effect of the assignment of said Clark Garrison to the bank was that the income theretofore payable to said Clark Garrison, lapsed and fell into the principal or *corpus* of said trust fund; that the trust was not thereby ended, but was to continue in the trustee until the death of said Clark Garrison, in which event, if he left issue him surviving, it would be held for and go to them as provided in the will, and if not, or if such issue all died before reaching majority, to the plaintiffs as therein provided.

Plaintiffs failing in their motion for new trial, brought the case here by appeal.

I. The able briefs in this case on the part of counsel for both sides have again illustrated that there is but one controlling rule for the construction of wills, towit: *the testators' real intention*—a rule emphasized by many decisions of this court and made mandatory by statute—a rule which rides down every other consideration—a broad highway, which, if we depart therefrom, we wander into by and forbidden paths, far afield from the goal we seek—to-wit, the law of the case.

Intention: Trust:
Assignment:
Termination.

It is emblazoned all over the face of said 7th clause that the testator did not intend to give his two grandsons named therein any estate which they could squander, but only a stipend of $1,000 per annum from the income of a trust fund of about $60,000, which would probably produce an income each year substantially more than

$1,000. It is also clear that the testator intended the *corpus* and surplus income to accumulate and to be held in trust for the issue of the said grandsons, living at the time of their death, and in the case of Clark, if no such issue survived him or some of such issue survived him, but all died before reaching their majority, *"then* the trust fund shall be distributed to said Mary B. Garrison [now plaintiff Mary B. Lane], Reginald E. Garrison and Cornelia Garrison Turner, share and share alike." Now up to this point the said 7th clause is perfectly clear— no one could entertain a doubt, be he lawyer or layman. Under such circumstances, judicial experience has shown that to prevent the real intention of the testator from being subverted and thwarted, such clear and distinct provisions first made will not be cut down by subsequent clauses ambiguous or inferential in their intent. [Chew v. Kellar, 100 Mo. 362; Cornet v. Cornet, 248 Mo. l. c. 223; Settle v. Shafer, 229 Mo. l. c. 568-570; Gannon v. Pauk, 200 Mo. l. c. 94 et seq; Wells v. Fuchs, 226 Mo. l. c. 105-108; Sevier v. Woodson, 205 Mo. l. c. 214-216; Yocum v. Siler, 160 Mo. l. c. 289; Thornhill v. Hall, 2 Clark and Fin. 22.]

Bearing these considerations in mind, was it the intention of the testator to cut out the subsequently-born issue, if any, of Clark Garrison (he having no issue at the time) in case he assigned or attempted to assign his interest in the trust fund, and to then and there terminate the trust and give the *corpus* and income and the accumulations thereof to the mother, brother and sister of said Clark Garrison? This is the contention of learned counsel for plaintiffs, and while it is presented with great learning and ability, we cannot thus construe the will. The clearly stated penalty in the will for the assignment or attempted assignment of his interest by said Clark is not the lapse of the principal or *corpus* of the trust fund and accumulations which had been so unequivocally given to the trustee in trust for the issue of said Clark, living at his death, but simply that "such provisions in favor of" said Clark "shall cease and lapse *as to him.*" And what follows? That the trust (which was an active one)

shall then cease and the *corpus* be distributed to Mrs. Mary B. Garrison (Mrs. Lane), Reginald E. Garrison and Cornelia Garrison Turner? Not at all. But "and the *beneficiary interest* in said fund shall pass to such other persons as would take same in case of his decease, *as above provided.*" The words, "beneficiary interest," were doubtless used so as not to indicate that the trust or trustee's title or duties were to cease and the *corpus* then and there be distributed, but rather to suggest that the trust and trustee should continue and not be disturbed and the *"beneficiary"* or equitable interest should pass "to such other persons as would take the same in case of his decease *as above provided.*" The "other persons" who would take in case of his decease *"as above provided,"* were his issue, if any, living at the time of his death, and not the plaintiffs, unless he never had any issue or his issue were all dead at the time of his death, or all died afterwards, before they reached their majority.

In the will construed in the case of In re Luscombe's Will, 109 Wis. 186, relied upon by the appellants' learned counsel, the provision was that in case judgment was obtained in proceedings to reach the income payable to the spendthrift, the trustee should cease to pay said income to him, and thenceforth expend the said income in the maintenance and education of his issue until they arrived at the age of twenty-one years and "in case there is no lawful issue living, then to distribute to my daughter Mary J. Wright and my said wife, and their issue, as hereinbefore provided." This is an express statement that if when the income to the son ceases he has no living issue, then the funds shall be distributed to the daughter and wife and their issue. If the language had been the same, that is, if the language here was that if no issue of said Clark was living when the forfeiture of his yearly income occurred, the fund should be *distributed to his mother, brother and sister,* as in the Wisconsin case, that case would be applicable.

The Wisconson case would seem to be the opposite of the case at bar, in that it contains the very words which are missing from the will here, but which the learned

counsel would read into it by inference and suggestion, which we hold cannot be done, without doing violence to the testator's true intent and meaning as shown by all the words of his will, viewed and construed together.

In will cases the construction which the courts have put upon other wills are usually of little value in arriving at the testator's intention in the particular will before the court, because, no two wills usually contain the same language and they are made under different circumstances. But there are two cases cited from the English High Court of Chancery by respondents' learned counsel, to-wit: In re Bedson's Trust, 28 Ch. Div. 523, and Blackmann v. Finch, 3 Chancery, 309, which may be read with profit as supporting the views we have expressed in construing the will in controversy here. In our opinion the only effect of the attempted transfer of the interest of said Clark Garrison to the defendant bank, was that his yearly stipend from the income of the trust fund lapsed and fell into the *corpus* of the fund and its accumulations, which the trustee, Arthur C. Garrison, held in trust and continued to hold in trust for those entitled to receive it upon the death of said Clark, as ruled by the learned chancellor below.

II. But it is urged that the whole provision as to the trust fund in question is void because it violates the rule as to perpetuities, in that an unborn child of an unborn child of said Clark Garrison might take thereunder (an entire departure from the theory of the petition). But

Perpetuity:
Remaindermen:
Unborn Children.

we do not regard this fact as in and of itself violating the rule as to perpetuities if said unborn child must be born and take, if it takes at all, within a life or lives in being and twenty-one years and the period of gestation thereafter. We have recently so decided. [Melvin v. Hoffman, 290 Mo. 464, 235 S. W. l. c. 115.] In the case now before us, none of the issue or descendants of said Clark Garrison were to take under the will unless they were living at the time of his death. If so, the trustee held their estates for them and they became vested,

upon the death of said Clark, subject to be divested in case none of them reached majority, in which event the title would vest in the plaintiffs. [Deacon v. Trust Co., 271 Mo. 669.] So that the plaintiffs, if they took at all, would take within twenty-one years and the period of gestation after the death of said Clark Garrison, which would be wthin the limit of time fixed by the rule against perpetuities. [Melvin v. Hoffman, supra.] We hold this point also against appellant.

Finding no error in the proceedings below, the judgment appealed from is affirmed. *Ragland, C.,* concurs; *Brown, C.,* absent.

PER CURIAM:—The foregoing opinion by SMALL, C., is adopted as the opinion of the court. All of the judges concur.