J. HORTON PAYNE et al., Appellants, v. JOHN E. REECE et al.

In Banc, February 2, 1923.

1. **WILL: Construction: Clear Devise: Reduced by Subsequent Clause.** The rule of the Lord Chancellor in Thornhill v. Hall, 2 Clark & Fin. l. c. 36, is quoted with approval, and *held*, that, in the construction of written instruments, an interest given or an estate conveyed in one part, bp terms clear, unambiguous, liable to no doubt and clouded by no obscurity, cannot be taken away by terms in another part less decisive or less certain and of doubtful import.

2. **———: ———: Intention.** By statute and by predominant decision the intention of the testator is the polar star by which courts are directed in the construction of wills, and such intention must be gathered from all the words contained within the four corners of the will.

3. **———: Absolute Devise to Wife: Reduced to Life Estate by Devise Over: Intention.** An item of the will, by which testator devised and bequeathed all of the remainder of his estate, real, personal and mixed, to his wife, "to have and use and enjoy as she may see fit," standing alone, was sufficient to devise an absolute estate

to his wife, which could not be cut down to a life estate by any subsequent doubtful or dubious words or clauses, but to limit the absolute devise so made to a life estate the subsequent clauses must clearly and unmistakably evince an intention so to do. Yet the next item of the will by which testator declared that "if any of said property should be left at the time of the death of my wife undisposed of, it is my will that all said property so remaining go absolutely to" a foster son, "if he be then living, and if" he "be not living, then to his children," evinces an equally clear and unmistakable purpose and intention; and the wife having died prior to the death of the testator, his will was not void, and his collateral kindred did not take the property by inheritance, but the entire estate went to such foster son, as the testator clearly intended it should.

4. ———: ———: ———: **Power of Disposition.** A will by which testator bequeathed and devised his entire estate to his wife, "to have and use and enjoy the same as she may see fit," contains no express power of disposition, but conceding that the power to sell for her use and enjoyment may be implied, that would make the devise no more conclusive than a general or indefinite devise with power of disposition; and in such case, if the subsequent clause contains words as affirmatively strong as those used in the devise to her, the general devise may be cut down to a life estate. And the next clause by which the testator declared that "if any of said property should be left at the time of the death of my wife undisposed of, it is my will that all said property so remaining go absolutely to" another, was as affirmatively strong and clear as the devise to her, and the two clauses read together manifested testator's unmistakable intention that she was to take a life estate, and that all the estate undisposed of at her death was to go to such other.

5. ———: **Death of Legatee Prior to Testator: Lapsed Life Estate: Devise of Remainder Valid.** A general residuary devise carries lapsed and void legacies. A testamentary disposition will lapse by the death of the legatee during the life of the testator, and the rule applies equally to devises of real estate and bequests of personal property; but it will be applied only to cases falling strictly within it. Where the will gave to testator's wife the residuum of his estate, "to have and use and enjoy the same as she may see fit," and by the next clause declared that "if any of said property should be left at the time of the death of my wife undisposed of, it is my will that said property so remaining go absolutely to" another, thereby giving to the wife a life estate and the remainder to such other, and the wife died prior to the death of the testator,

the item devising to her a life estate became void, but it did not render void the next clause, but that clause, devising the remainder to such other, remained a live provision, and took effect immediately upon the death of the testator.

Appeal from Sullivan Circuit Court.—*Hon. Fred Lamb,* Judge.

AFFIRMED.

*R. F. Hickman, J. W. Bingham* and *D. M. Wilson* for appellants.

(1) When a devise shall be considered in fee simple. Sec. 579, R. S. 1909. (2) Item 3 of the will vests whole title in fee simple in the wife, and item 4 does not cut down or limit the said item numbered three. Middleton v. Dudding, 183 S. W. 443; Sevier v. Woodson, 205 Mo. 104; Roth v. Rauschenbusch, 173 Mo. 282; Underwood v. Cave, 176 Mo. 1; Howard v. Howard, 184 S. W. 993; Chew v. Keller, 100 Mo. 362; Small v. Field, 102 Mo. 104; Yocum v. Siler, 160 Mo. 281; Roberts v. Crume, 173 Mo. 572; Goodwin v. Cobbington, 154 N. Y. 283; Clark v. Lupp, 88 N. Y. 228; Freeman v. Coist, 96 N. Y. 63; Landon v. Moore, 45 Conn. 422; Banzer v. Banzer, 156 N. Y. 429. (3) The general rule is, that a devise of an estate generally or indefinitely, with a power of disposition over it, carries a fee. Rubey v. Barnett, 12 Mo. 3; Gregory v. Cowgill, 19 Mo. 416; Green v. Sutton, 50 Mo. 186; Reinders v. Koppelman, 68 Mo. 482.

*John W. Clapp, E. P. Fields* and *Alpha L. Burns* for respondent.

(1) No set words are necessary to creat a life estate. If the intention is gathered from the whole will that only a life estate is created it will be sufficient. Smith v. Bell, 6 Peters, 68; Harbison v. James, 90 Mo. 411; Walton v. Dumatra, 125 Mo. 489; R. S. 1919, sec. 555;

Giles v. Little, 104 U. S. 291; Eckle v. Ryland, 256 Mo. 424; Mase v. Hollenbeck, 175 S. W. 876; Grace v. Perry, 197 Mo. 550; Gannon v. Pauk, 200 Mo. 75. And if there is a devise over after the death of the first taker, the effect is to create a life estate. Tillerson v. Taylor, 282 Mo. 209. (2) Item three of the will created a life estate in the wife. Smith v. Bell, 6 Peters, 68; Harbison v. James, 90 Mo. 411; Munro v. Collins, 95 Mo. 33; Lewis v. Pitman, 101 Mo. 281; Burnet v. Burnet, 244 Mo. 491; McMillan v. Farrow, 141 Mo. 55; Armour v. Frey, 266 Mo. 646. (3) The power of disposition did not convert the estate into one in fee simple, where the intention was clearly expressed, as in item 4 that the estate go to Reece at the death of testator's wife. Siegwald v. Hewitt, 37 Ill. 435; Green v. Hewitt, 97 Ill. 113. (4) The court will not hold that a legacy is lapsed unless, under the facts of the case and the law, it is compelled to do so. Martin v. Lachasse, 47 Mo. 591. (5) If a life estate was created in the wife, "as we insist it was in this case," then her death before the death of the testator did not cause the legacy to her to lapse so as to defeat the legatee, Reece. Crozier v. Brady, 120 N. Y. 374; Bates v. Dewson, 128 Mass. 304; Robison v. Portland Orphan Asylum, 123 U. S. 702; Burnet v. Burnet, 244 Mo. 491; Lewis v. Pitman, 101 Mo. 281; Harbison v. James, 90 Mo. 411.

REEVES, C.—This is a suit to construe the will of Jordan T. Payne. The question arises on the construction of items 3 and 4 thereof, as follows:

"Item 3. All the remainder of my estate, real, personal and mixed, I will, devise and bequeath to my beloved wife, Mary Susan Payne, to have and use and enjoy the same as she may see fit.

"Item 4. If any of said property should be left at the time of the death of my wife undisposed of, it is my will that all said property so remaining go absolutely to John E. Reece, if he be then living, and if the said John E. Reece be not living, then to his children."

Testator died childless. Plaintiffs were his collateral kindred. Defendant, John E. Reece, the beneficiary named in Item 4, had lived with testator and his wife from early childhood, doing the greater part of the work on testator's farm, and had sustained a filial relation, though neither adopted nor bearing their name. On their part testator and wife had manifested a parental solicitude toward him. Testator's wife predeceased him so that it was the contention of plaintiffs that said items of the will became void, and particularly so as, in their view, Item 4 was too ambiguous to reduce or limit the absolute estate devised by Item 3. An issue was made up in the trial court on the above question. Defendants prevailed and plaintiffs appealed.

I. Preliminary to a consideration of the question involved, we should advert to certain time-tested, honored and wise rules of construction. A rule observed uniformly in all of the decisions of this State was declared by the Lord Chancellor in the House of Lords in 1834 in the case of Thornhill v. Hall, 2 Clark & Fin. 22, l. c. 36, wherein he said:

**Rules of Construction.**

"I hold it to be a rule that admits of no exception, in the construction of written instruments, that, where one interest is given, where one estate is conveyed—where one benefit is bestowed in one part of an instrument by terms clear, unambiguous, liable to no doubt, clouded by no obscurity, by terms upon which, if they stood alone, no man breathing, be he lawyer or be he layman, could entertain a doubt—in order to reverse that opinion, to which the terms would of themselves and standing alone have led, it is not sufficient that you should raise a mist; it is not sufficient that you should create a doubt; it is not suffcient that you should show a possibility; it is not even suffcient that you should deal in probabilities, but you must show something in another part of that instrument which is as decisive the one way as the other terms were decisive the other way; and that

the interest first given cannot be taken away either by *tacitum* or by *dubium* or by *possibile,* or even by *probabile,* but that it must be taken away, and can only be taken away, by *expressum et certum."*

The above rule in substance was declared in Burnet v. Burnet, 244 Mo. 491, 148 S. W. 872; Gibson v. Gibson, 239 Mo. 490, 144 S. W. 770; Lemp v. Lemp, 264 Mo. 533, 175 S. W. 618; Cornet v. Cornet, 248 Mo. 184, 154 S. W. 121; Middleton v. Dudding, 183 S. W. (Mo.) 443.

Another principle for the use of courts, always predominant, in cases like this, is to "look upon the intention of the testator as the polar star to direct them in the construction of wills." [Smith v. Bell, 6 Peters, 68, 31 U. S. 68; 40 Cyc. 1386.]

The foregoing principle is reinforced by express statute: "All courts and others concerned in the execution of last wills shall *have due regard to the directions of the will, and the true intent and meaning of the testator,* in all matters brought before them." [Sec. 555, R. S. 1919.]

II. With these general principles before us we may proceed to an examination of the clauses in question. It is contended by appellants that Item 3 of said will passed the absolute title of all of testator's estate to his wife, and that the words contained in Item 4 were insufficient to reduce or limit the estate so devised and bequeathed. The Legislature of this State tendered its aid in construing wills of the kind at bar. Note the following enactment:

**Absolute Estate: Reduced to Life Estate.**

"In all devises of lands or other estate in this State, in which the words 'heirs and assigns,' or 'heirs and assigns forever,' are omitted, *and no expressions are contained in such will whereby it shall appear that such devise was intended to convey an estate for life only, and no further devise be made of the devised premises, to take effect after the death of the devisee to whom the*

*same shall be given,* it shall be understood to be the intention of the testator thereby to devise an absolute estate in the same, and shall convey an estate in fee simple to the devisee, for all such devised premises." [Sec. 551, R. S. 1919.]

Applying the rules of construction above set out it is obvious that Item 3 of said will, standing alone, was sufficient to devise an absolute estate to Mary Susan Payne and that such estate could not be cut down to a life estate by any words, expressions or clauses lacking in clarity or of a doubtful and dubious nature, but that to limit the devise made by such Item 3 to a life estate the will must of necessity contain clauses or provisions clearly and unmistakably evincing a purpose and an intention of the testator so to do.

Keeping before us the guiding star—the testator's intentions—and bringing to our aid the oft-declared rule that such intentions must be gathered from all of the words contained in the four corners of the will (Brown v. Tuschoff, 235 Mo. 449), we examine Item 4: "If any of said property should be left at the time of the death of my wife undisposed of, it is my will that all said property so remaining go absolutely to John E. Reece, if he be then living, and if the said John E. Reece be not living, then to his children."

Could words more clearly announce the purpose and intention of the testator than these? In the first paragraph testator devises and bequeaths all his estate to his wife "to have and use and enjoy the same as she may see fit." No limitation is put upon her use and enjoyment of the estate devised and bequeathed, and yet by the next clause "within the four corners of the will," testator clearly and unmistakably and without ambiguity directs that if such use and enjoyment did not exhaust the estate, the residue should "go absolutely to John E. Reece." It will be noted that there is no express power of disposition contained in Item 3 and conceding that the power to sell might be implied for her use and en-

joyment, yet that would make the devise no stronger than a general or indefinite devise with a power of disposition. In such case, if the subsequent clause contains words as *affirmatively* strong as those used in the first paragraph, the general devise may be cut down to a life estate. [Armour v. Frey, 226 Mo. 646.] And this rule is not opposed by Roth v. Rauschenbusch, 173 Mo. 582.

In the Roth Case, other than testator's wife, there was no special object of his bounty and the limitation clause was too indefinite as to the remaindermen. Moreover, the first taker was not restricted to the use and enjoyment of the property devised and bequeathed, but was given unrestrained power of disposition. Note this distinction made by GANTT, J., the author: "A distinction must be made between those cases where there is a devise generally or indefinitely *with a* power of disposition, and those cases where there is a devise for life with a power of disposition."

In the case of Munro v. Collins, 95 Mo. 33, l. c. 41, an estate was devised to the wife for her use and enjoyment with limitation over as to the unused portion of such estate at her death. The court said: "*The intention of the testator is plain; the whole will must be read together and effect given to every clause of it, and the words used are to be understood in the sense indicated by the whole instrument. The testator's wife was to have the use and enjoyment of all of his property during her life, and at her death what had not been consumed, or lost, in that use and enjoyment, was to go to his adopted daughter.*" (Italics are ours).

To the same effect is the cases of Burnet v. Burnet, 244 Mo. 491, and McMillan v. Farrow, 141 Mo. 55. In holding, in the case at bar, that the will created a life estate in the first taker with remainder over to respondent, John E. Reece, there is no conflict with the legal principles enunciated in the case of Middleton v. Dudding, 183 S. W. 443. The law is the same in that case as here. If there be a difference it is in the application of such

principles to the instruments under consideration, and, moreover, the language of one will is rarely exactly like another and frequently a very slight change in the verbiage calls for different constructions of two wills much alike in other respects. [Roth v. Rauschenbusch, supra; Lane v. Garrison, 293 Mo. 530.]

In the case of Middleton v. Dudding, the testator bequeathed to his wife "as her absolute property" all of his estate. Construing the will at bar in the light of Section 551, Revised Statutes 1919, the devise was just as strong as in the case of Middleton v. Dudding. The codicil in the latter case was an attempted limitation upon the devising clause of the will, and provided that if testator's wife should "die without a will or having disposed of the above property," etc., then the testator attempted to make disposition of the property so remaining. The majority opinion in the Middleton-Dudding Case discerned in this language words not "equally as strong, clear and significant as the terms used to vest the fee." The divisional opinion in that case, prepared by RAILEY, C., and adopted by WOODSON, J., in his dissent, was a clear, able and exhaustive review of all of the authorities and correctly declared the law, but was rejected because of the construction placed by him upon the language of the codicil to the effect that such language was sufficient to evince a clear purpose on the part of the testator to limit the estate devised to his wife with remainder over to certain named devisees and legatees.

The learned author of the majority opinion in the Dudding Case also collated and declared the law abstractly. There was not a conflict of law between the majority and minority opinions, but a conflict in the vital matter of application and construction. RAILEY, C., following the admonition of the statute, to effectuate the intention of the testator, subordinated every other consideration, and in so doing he was sustained by the authorities.

"There is but one controlling rule for the construction of wills, to-wit, the testator's real intentions; a rule

emphasized by many decisions of this court and made mandatory by statute; a rule which rides down every other consideration; a broad highway which, if we depart therefrom, we wander into by and forbidden paths, far afield from the goal we seek, to-wit, the law of the case.'' ¡[Lane v. Garrison, supra.]

The writer of the majority opinion directed his attention more particularly to the verbiage of the two clauses under analysis, and marshaled the words of the one against the words of the other, and in that encounter, as he thought, there arose a mist or fog, or something, that served to obscure and cast doubt on the otherwise obvious purpose of the testator.

In the case at bar, in the light of all of the authorities and the recognized rules of construction, the devise in Item 3 created a life estate in the first taker with remainder over to the beneficiaries named in Item 4. This was the clear intention of the testator. [McMillan v. Farrow, supra.]

III. It is contended by appellants that upon the death of Mary Susan Payne, testator's wife, occurring before his death, the item with respect to her became void, and that Item 4 was so far dependent on Item 3 that, by the lapsing of the one, the other was dragged into oblivion. That a testamentary disposition will lapse by the death of the legatee during the life of the testator is a conceded principle and most clearly established. This rule applies equally to devises of real, as well as to bequests of personal estate, ''but the doctrine will not be extended beyond cases falling strictly within it. Therefore, if a legacy or devise be given to one by name, and in the event of his death to another, the alternative gift will take effect if the first legatee or devise die even in the testator's lifetime.'' [Martin v. Lachasse, 47 Mo. 591.]

*Lapsed Legacy.*

In making his will testator was dealing with his entire estate and undertook to dispose of all of it. It was

not his intention to die intestate, so he provided for his wife during her life and at her death it was his will that the residuum pass to respondent Reece. Under such circumstances, when the item providing for his wife (who took all of the estate during her life) became void, the residuary clause of the will remained a live provision and receptive, for a general residuary bequest carries lapsed and void legacies. [40 Cyc. 569.]

In accordance with testator's purpose, as disclosed by his will, the situation of the parties duly considered, the whole estate vested under the provisions of the residuary clause in John E. Reece. [Gillilan v. Gillilan, 278 Mo. 99, 212 S. W. 348; Sandusky v. Sandusky, 261 Mo. 351.]

The judgment of the trial court was correct and must be affirmed. It is so ordered; *Railey, C.,* concurs; *White, C.,* not sitting.

PER CURIAM:—The foregoing opinion of REEVES, C., is adopted by Court in Banc. *Woodson, C. J., David E. Blair, Ragland, White* and *Walker, JJ.,* concur; *Graves* and *James T. Blair, JJ.,* concur in paragraphs 1 and 3 and the result.